**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WOLFSPEED, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 26-818-GBW |
| | ) | |
| NAVITAS SEMICONDUCTOR CORP., | ) | JURY TRIAL DEMANDED |
| NAVITAS SEMICONDUCTOR IRELAND, | ) | |
| LLC, GENESIC SEMICONDUCTOR LLC, | ) | |
| AND NAVITAS SEMICONDUCTOR USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

**Page**


BACKGROUND ... 2

ARGUMENT ... 4

I. LEGAL STANDARD ... 4

II. PRIVATE INTEREST FACTORS WEIGH AGAINST TRANSFER ... 5

- A. Factor 1: Plaintiff's Forum Choice Strongly Weighs Against Transfer ... 5
- B. Factor 2: Defendant's Preferred Forum Carries Minimal Weight ... 8
- C. Factor 3: Where the Claims Arose Weighs Against Transfer ... 9
- D. Factor 4: Convenience of the Parties Weighs Against Transfer ... 10
- E. Factor 5: Convenience of Witnesses Weighs Against Transfer ... 11
- F. Factor 6: Location of Books and Records Weighs Against Transfer ... 13

III. PUBLIC INTEREST FACTORS ALSO WEIGH AGAINST TRANSFER ... 14

- A. Factor 7: Enforceability of the Judgment Is Neutral ... 14
- B. Factor 8: Practical Considerations Weigh Against Transfer ... 14
- C. Factor 9: Court Congestion Does Not Support Transfer ... 15
- D. Factor 10: Local Interest Weighs Against Transfer ... 16
- E. Factor 11: Public Policies of the Fora Weigh Against Transfer ... 18
- F. Factor 12: Familiarity with Applicable Law Is Neutral ... 19

CONCLUSION ... 19

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abraxis Bioscience, LLC v. HBT Labs, Inc.*,
2019 WL 2270440 (D. Del. May 28, 2019) ........ 6, 7

*Acuity Brands, Inc. v. Cooper Indus., Inc.*,
2008 WL 2977464 (D. Del. July 31, 2008) ........ 6, 10

*ADE Corp. v. KLA-Tencor Corp.*,
138 F. Supp. 2d 565 (D. Del. 2001) ........ 10, 17

*Amgen, Inc. v. Ariad Pharms., Inc.*,
513 F. Supp. 2d 34 (D. Del. 2007) ........ 7

*Autodesk Canada Co. v. Assimilate, Inc.*,
2009 WL 3151026 (D. Del. Sept. 29, 2009) ........ 16

*Burroughs Wellcome Co. v. Giant Food, Inc.*,
392 F. Supp. 761 (D. Del. 1975) ........ 7

*C.R. Bard, Inc. v. Angiodynamics, Inc.*,
156 F. Supp. 3d 540 (D. Del. 2016) ........ 13

*Cradle IP, LLC v. Texas Instruments, Inc.*,
923 F. Supp. 2d 696 (D. Del. 2013) ........ 9, 13

*Cypress Semiconductor Corp. v. Integrated Cir. Sys., Inc.*,
2001 WL 1617186 (D. Del. Nov. 28, 2001) ........ 7

*David & Lily Penn, Inc. v. TruckPro, LLC*,
2019 WL 4671158 (D. Del. Sept. 25, 2019) ........ 5

*Derry Fin. N.V. v. Christiana Cos.*,
555 F. Supp. 1043 (D. Del. 1983) ........ 10, 13

*Devicor Med. Prods., Inc. v. Biopsy Scis., LLC*,
2013 WL 1628644 (D. Del. Apr. 15, 2013) ........ 5

*Genedics, LLC v. Meta Co.*,
2018 WL 417950 (D. Del. Jan. 16, 2018)....................6

*Hologic, Inc. v. Minerva Surgical, Inc.*,
163 F. Supp. 3d 118 (D. Del. 2016)....................7

*Intellectual Ventures I LLC v. Altera Corp.*,
842 F. Supp. 2d 744 (D. Del. 2012).................... *passim*

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
797 F. Supp. 2d 472 (D. Del. 2011)....................16, 17

*Jumara v. State Farm Insurance Co.*,
55 F.3d 873 (3d Cir. 1995)....................4, 5, 11

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,
2015 WL 4778828 (D. Del. Aug. 13, 2015)....................18

*Magnacross LLC v. GE MDS LLC*,
2020 WL 6581530 (D. Del. Nov. 10, 2020)....................7

*Mallinckrodt Inc. v. E-Z-Em Inc.*,
670 F. Supp. 2d 349 (D. Del. 2009)....................10, 16

*Micron Tech., Inc. v. Rambus Inc.*,
645 F.3d 1311 (Fed. Cir. 2011)....................17

*Nokia of America Corp. v. Acer Inc.*,
2026 WL 2085863 (D. Del. July 20, 2026)....................11, 14

*Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*,
114 F. Supp. 3d 187 (D. Del. 2015)....................11

*Sentient Sensors, LLC v. Cypress Semiconductor Corp.*,
2020 WL 3640065 (D. Del. July 6, 2020)....................17

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970)....................1, 4, 5

*Smart Audio Techs., LLC v. Apple, Inc.*,
910 F. Supp. 2d 718 (D. Del. 2012)....................12

*Stephenson v. Game Show Network, LLC*,
933 F. Supp. 2d 674 (D. Del. 2013)....................6, 8

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017)....................6

*Textron Innovations Inc. v. The Toro Co.*,
2005 WL 2620196 (D. Del. Oct. 14, 2005)....................16

*Varian Med. Sys., Inc. v. Elekta AB*,
2016 WL 3341865 (D. Del. June 8, 2016)....................12, 17

*Versata Software, Inc. v. Callidus Software Inc.*,
944 F. Supp. 2d 357 (D. Del. 2013)....................9

*VLSI Technology LLC v. Intel Corp.*,
2018 WL 5342650 (D. Del. Oct. 29, 2018)....................7, 18

*Walker Digital, LLC v. Multi-State Lottery Ass'n*,
2011 WL 13140666 (D. Del. Mar. 3, 2011)....................4

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
157 F.R.D. 215 (D. Del. 1993)....................7

*Wiremed Tech LLC v. Adobe Inc.*,
2019 WL 2250643 (D. Del. May 24, 2019)....................9

**STATUTES**

28 U.S.C. § 1404(a)....................4, 19

**OTHER AUTHORITIES**

U.S. Patent No. 8,169,005....................3

Defendants' Motion to Transfer Venue (D.I. 19) should be denied. In the Third Circuit, a plaintiff's choice of forum is a "paramount consideration" that "should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted). Transfer is warranted only when the balance of convenience "strongly" favors the defendant. *Id.* Here, Defendants do not carry that heavy burden. Every party to this litigation—Plaintiff Wolfspeed, Inc. ("Wolfspeed") and all four Defendants—is a Delaware entity. Ex. 1 at 5; Exs. 2–5. Every Defendant chose Delaware as its corporate home. That choice has consequences. Wolfspeed has exercised its prerogative to bring suit in that shared state of incorporation. Defendants' attempt to transfer out of its chosen venue is without merit.

Contrary to its argument (D.I. 20 at 3), Defendants are not a "local" California company in any meaningful sense—they are a multinational enterprise with the majority of their workforce located in Asia, not California. Ex. 6 at 7, 12. They are self-described "fabless" semiconductor companies operating worldwide. *Id.* at 6, 8, 9, 37, 56. Meanwhile, Wolfspeed is not a resident of California (being incorporated in Delaware) and does not currently own or operate any facilities in California nor does it maintain any records related to this matter in California. Moreover, Wolfspeed's infringement claims are nationwide in scope and arise outside of California. D.I. 24 at ¶ 35.

Defendants' conduct in other litigation is also instructive. Defendants filed their Motion to Transfer on September 9, 2026. Prior to that filing, Defendant Navitas Semiconductor Ireland, LLC filed its own patent infringement lawsuit against Renesas Electronics Corporation ("Renesas") in the Eastern District of Texas—approximately 1,500 miles from Torrance, California—represented by the very same counsel who now argue that Wilmington, Delaware is uniquely inconvenient. *See* Ex. 7. Navitas pled that Renesas is a foreign corporation (*id.* at ¶ 4),

and hence, Navitas could have filed that suit in the United States District Court for the Central District of California. *Id.* at ¶ 12 ("Renesas … may be sued in any judicial district."). It did not. Defendants' willingness to litigate patent disputes across the country when it suits their interests materially undermines their convenience arguments here.

As demonstrated below, the twelve *Jumara* factors—analyzed individually and in their totality—weigh against transfer. At most, Defendants can point to their own preference for California, which falls far short of the showing required to sustain transfer. The Motion should be denied.

**BACKGROUND**

Wolfspeed is a global semiconductor company focused on wide-bandgap semiconductor technology, including silicon carbide ("SiC") and gallium nitride ("GaN"). Ex. 1 at 5, 6. Its products include SiC bare wafers, epitaxial wafers, Schottky diodes, MOSFETs, and power modules, which serve customers in automotive, industrial, energy, and data center applications worldwide. *Id.* at 6. Founded in 1987, Wolfspeed has spent nearly four decades developing SiC materials, semiconductor devices, and related manufacturing technologies. *Id.* at 5, 6.

Wolfspeed is incorporated in Delaware, with its principal executive offices in Durham, North Carolina. *Id.* at 5. Its research, development, and manufacturing operations are geographically distributed across North Carolina, New York, and Arkansas. *Id.* Wolfspeed's Durham facilities encompass more than one million square feet and include administrative, production, and research and development operations. *Id.* at 25. Its approximately 634,000-square-foot facility in Marcy, New York, includes administrative and production operations, and its Fayetteville, Arkansas, facility supports research and development and production. *Id.* Wolfspeed also operates large production facilities in North Carolina. *Id.*

The five patents-in-suit concern fundamental innovations in Wolfspeed's wide-bandgap semiconductor technology. *See* D.I. 24-1–24-5. Four of the five patents-at-issue were conceived and reduced to practice by Wolfspeed engineers working at Wolfspeed facilities in North Carolina and Arkansas.[1] The named inventors and other Wolfspeed technical personnel located outside of California will be material witnesses throughout this case.

All four Defendants are Delaware entities. Exs. 2–5. Navitas Semiconductor Corporation is incorporated in Delaware and is the parent company of the Navitas corporate family, including Defendants Navitas Semiconductor Ireland, LLC and GeneSiC Semiconductor LLC. Ex. 6 at 1, 6. Navitas Semiconductor USA, Inc. is also a Delaware corporation. Ex. 5. Together, these entities form a global semiconductor enterprise spanning multiple continents. Ex. 6 at 6, 7.

Defendants' purported connection to California consists principally of leased office and research-and-development space. *See* D.I. 20 at 3; Ex. 6 at 35. Defendants do not own any real property. Ex. 6 at 35. As of Defendants' most recent 10-K, they leased approximately 50,000 square feet of corporate office and research and development space in Torrance, California—but far more substantial office, research and development, and design center space in China, Taiwan, and South Korea. *Id.* Defendants also entered into a lease for other office and research and development space outside of this district (Santa Clara, California) in December 2025. *Id.* at 72.

Defendants' operations are geographically dispersed across multiple continents rather than concentrated in California. *Id.* at 7. Its 10-K filings identify operations in the United States, Ireland, Germany, Italy, Belgium, China, Taiwan, Thailand, South Korea, and the Philippines. *Id.* As of December 31, 2025, Defendants reported approximately 190 employees worldwide, with

[1] The fifth patent-in-suit (U.S. Patent No. 8,169,005) was developed at a California facility no longer owned or operated by Wolfspeed.

only 32% located in the United States, 65% in Asia, and 3% in Europe. *Id.* at 12. In sum, Defendants are a global enterprise with the clear majority of their workforce outside California.

Further, Defendants describe themselves as a "fabless" semiconductor design company and a "product design house" that outsources wafer fabrication, assembly, and testing to third-party manufacturing partners located in multiple countries outside the United States. *Id.* at 6, 8, 9, 37, 56. Their manufacturing and supply chain extend well beyond California and include third-party facilities in Asia. *Id.* at 9, 24, 25. The six accused product families—GaNFast, GaNSlim, GaNSafe, GaN FET, GeneSiC MOSFETs, and SiCPAK Modules—are sold internationally and throughout the United States, including in Delaware. *Id.* at 39.

## ARGUMENT

### I. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." The movant bears a heavy burden: "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration," and transfer is warranted only when "the balance of convenience of the parties is ***strongly*** in favor of defendant." *Shutte*, 431 F.2d at 25 (emphasis in original) (citation omitted). The Third Circuit evaluates transfer motions under the twelve-factor framework established in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). Transfer must be denied where these factors are "evenly balanced or weigh only slightly in favor of the transfer." *Walker Digital, LLC v. Multi-State Lottery Ass'n*, 2011 WL 13140666, at *1 (D. Del. Mar. 3, 2011). Here, Defendants must demonstrate that the balance tilts ***strongly*** in their favor—a standard they do not satisfy here.

The twelve *Jumara* factors used for evaluating transfer are divided into private and public interest factors. The six private interest factors are: (1) the plaintiff's original forum choice; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of witnesses, to the extent they may actually be unavailable for trial in one of the fora; and (6) the location of books and records, to the extent they could not be produced in the alternative forum. The six public interest factors are: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative court congestion in each forum; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the trial judge's familiarity with applicable state law. *Jumara*, 55 F.3d at 879–80.

## II. PRIVATE INTEREST FACTORS WEIGH AGAINST TRANSFER

### A. Factor 1: Plaintiff's Forum Choice *Strongly* Weighs Against Transfer

The first *Jumara* factor—Wolfspeed's original choice of forum—is a "paramount consideration in any determination of a transfer request." *Shutte*, 431 F.2d at 25. This principle commands the greatest deference when the plaintiff has chosen its home forum, but it also applies with substantial force when the plaintiff selects the forum of the defendants' incorporation. *See, e.g.*, *Devicor Med. Prods., Inc. v. Biopsy Scis., LLC*, 2013 WL 1628644, at *3 (D. Del. Apr. 15, 2013) ("Devicor is a Delaware corporation, and its forum choice therefore is entitled to some measure of heightened deference."); *David & Lily Penn, Inc. v. TruckPro, LLC*, 2019 WL 4671158, at *3, *5 (D. Del. Sept. 25, 2019) (explaining that the choice to litigate in Delaware "receives substantial or even paramount weight" as the plaintiff "chose Delaware for legitimate reasons: it knew this Court could exercise personal jurisdiction over [the defendant], a Delaware entity"). Here, Wolfspeed's choice satisfies both conditions: Wolfspeed is a Delaware corporation,

and every Defendant is a Delaware entity. Exs. 2–5. Wolfspeed's choice of venue is the paradigmatic case—both plaintiff and defendant incorporated in the same state—for which the plaintiff's forum choice should prevail.

Wolfspeed's choice to sue in the corporate home of all Defendants is "rational and legitimate." *Genedics, LLC v. Meta Co.*, 2018 WL 417950, at *3 (D. Del. Jan. 16, 2018); *see also, e.g.*, *Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 678 (D. Del. 2013) ("Defendant's state of incorporation is a traditional and legitimate venue. Moreover, plaintiffs (as the injured parties) have historically been accorded the privilege of choosing the venue for pursuing their claims."). This rationale is "stronger still" following the Supreme Court analysis in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017). That analysis confirmed that a domestic corporation "resides" only in its state of incorporation for purposes of patent venue. *Id.* at 262. Under *TC Heartland*, Delaware is the one forum where venue is proper based on the corporate residency of *every* Defendant. Wolfspeed's selection of precisely that forum deserves the utmost respect. Defendants—each of which made precisely the same choice to incorporate or organize in Delaware—are poorly positioned to suggest that Wolfspeed's selection of its state of incorporation as a litigation forum is anything other than rational and legitimate. *See, e.g.*, *Acuity Brands, Inc. v. Cooper Indus., Inc.*, 2008 WL 2977464, at *2 (D. Del. July 31, 2008) ("Having received the benefits of Delaware incorporation, a defendant cannot now complain that another corporation has chosen to sue it here.").

Defendants' argument (D.I. 20 at 6) that Wolfspeed's forum choice merits diminished weight because Wolfspeed lacks physical operations in Delaware has been repeatedly rejected by courts in this district. In *Abraxis Bioscience, LLC v. HBT Labs, Inc.*, 2019 WL 2270440 (D. Del. May 28, 2019), the court held that a plaintiff's incorporation in Delaware is sufficient to accord its

forum choice *full weight*, even absent a physical presence. *See id.* at *2 ("I will not discount Plaintiff's choice of forum based on a lack of physical ties to Delaware."); *see also Magnacross LLC v. GE MDS LLC*, 2020 WL 6581530, at *5 (D. Del. Nov. 10, 2020) (similar). In *VLSI Technology LLC v. Intel Corp.*, 2018 WL 5342650, at *4–5 (D. Del. Oct. 29, 2018), the court explicitly rejected the same argument as inconsistent with *Shutte* and reaffirmed the holding in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975), reading *Shutte*'s "statement of 'black letter law' as an across-the-board rule favoring plaintiff's choice of forum." *VLSI Tech.*, 2018 WL 5342650, at *4 (quoting *Burroughs Wellcome*, 392 F. Supp. at 763). The court "f[ou]nd it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum." *Id.* at *5. These decisions reflect the sound principle that a corporation's legal domicile is a meaningful connection to a forum—not a formality to be disregarded at the defendant's convenience.

The District of Delaware has consistently denied transfer in cases where parties were incorporated in Delaware but otherwise lacked meaningful connections to the state. *See, e.g.*, *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 120 (D. Del. 2016); *Amgen, Inc. v. Ariad Pharms., Inc.*, 513 F. Supp. 2d 34, 46 (D. Del. 2007); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 219 (D. Del. 1993). Indeed, the court has denied transfer even where only the plaintiffs were incorporated in Delaware. *See, e.g.*, *Cypress Semiconductor Corp. v. Integrated Cir. Sys., Inc.*, 2001 WL 1617186, at *1 (D. Del. Nov. 28, 2001).

Directly on point is *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012) (hereinafter, "*Intellectual Ventures (Altera)*"), in which the plaintiff and all four defendants were Delaware entities and the court denied a motion to transfer to California even though none of the parties had a principal place of business in Delaware. *Id.* at 749–50. Critically,

the defendants in that case had substantial California connections: One defendant, Altera, was headquartered in San Jose and developed the accused technology there; another defendant, Xilinx, was also headquartered in San Jose; and Microsemi, headquartered in Irvine, developed its accused technology in Mountain View—collectively employing thousands at these locations. *Id.* at 749. And a further defendant, Lattice, maintained a significant engineering facility in San Jose where the "great majority" of its product development occurred. *Id.* Notwithstanding, the court still denied transfer. *Id.* at 760 ("Defendants have failed to satisfy their burden of showing that the balance of convenience factors and interests of justice weigh strongly in favor of transfer.").

In the present case, the considerations for denying transfer out of Delaware are even stronger. Defendants' asserted California connections consist principally of leased office and research and development space and a minority of employees (Ex. 6 at 12, 35)—a far cry from the corporate headquarters, development centers, and thousands of employees at issue in *Intellectual Ventures (Altera)*. As the California connections in *Intellectual Ventures (Altera)* were insufficient to warrant transfer, Defendants' considerably more attenuated contacts here cannot justify moving this case from the forum in which all four Defendants are incorporated.

Thus, this first factor weighs ***strongly*** against transfer.

**B. Factor 2: Defendant's Preferred Forum Carries Minimal Weight**

Although Defendants prefer the Central District of California, "[u]nder Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference." *Intellectual Ventures (Altera)*, 842 F. Supp. 2d at 755. The court has specifically recognized that courts should "decline[] to elevate defendants' convenience over the choice of a neutral forum selected by [all] defendants as the situs of their incorporation." *Stephenson*, 933 F. Supp. 2d at 678 (finding that "[t]he parties' choice of forum weighs against transfer" where both

defendants were Delaware entities); *see also, e.g.*, *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 699–700 (D. Del. 2013) (same). That principle has particular force here because ***all four*** Defendants chose Delaware as their corporate domicile. Exs. 2–5. Accordingly, Defendants' preference for California is not entitled to the same weight as Plaintiff's choice of Delaware.

This second factor warrants only limited weight in favor of transfer.

**C. Factor 3: Where the Claims Arose Weighs Against Transfer**

Defendants contend that Wolfspeed's claims "arose" in California and that California is the "epicenter" of this dispute because certain of their operations are located there. D.I. 20 at 8, 9. They mischaracterize the dispute. Contrary to Defendants' argument, patent infringement claims arise "***wherever*** someone has committed acts of infringement." *Versata Software, Inc. v. Callidus Software Inc.*, 944 F. Supp. 2d 357, 360 (D. Del. 2013) (emphasis added). For nationally sold products, infringement occurs throughout the United States. *See Wiremed Tech LLC v. Adobe Inc.*, 2019 WL 2250643, at *3 (D. Del. May 24, 2019). Indeed, where, as here, the plaintiff "has accused" the defendants of "infringement throughout the United States, including Delaware," those "claims also arose in Delaware." *Id.*; *see* D.I. 24 at ¶ 35. Defendants do not—*and cannot*—dispute that acts of infringement have occurred outside of California, including Delaware. Defendants' own public disclosures confirm that they offer to sell, and do sell, their semiconductor products to customers across the country and around the world. Ex. 6 at 39. The argument that the alleged infringement is concentrated in California is baseless.

This factor weighs against transfer or is neutral.

### D. Factor 4: Convenience of the Parties Weighs Against Transfer

All four Defendants voluntarily chose Delaware as their corporate domicile. Exs. 2–5. A party that has "accept[ed] the benefits of incorporating in Delaware" faces an "uphill climb" to argue that litigating in Delaware is inconvenient. *Intellectual Ventures (Altera)*, 842 F. Supp. 2d at 756 (quoting *Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 357 (D. Del. 2009) (internal citations omitted)); *see also, e.g.*, *Acuity Brands*, 2008 WL 2977464, at *2. "[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). Defendants have identified no such unique burden here.

Contrary to their argument that they are a small California firm (D.I. 20 at 3), Defendants are a publicly traded multinational enterprise with worldwide operations. Ex. 6 at 6, 7. Defendants' latest 10-K confirms that the company maintains operations in the United States, Ireland, Germany, Italy, Belgium, China, Taiwan, South Korea, and the Philippines. *Id.* While the 10-K identifies Torrance, California as the principal executive office, the same report confirms that the vast majority of Defendants' employees are located outside of California. *Id.* at 7, 12. Moreover, GeneSiC historically maintained a fabrication and testing facility in Dulles, Virginia—a fact Defendants conveniently omit. Ex. 8 at 2. The record does not support the premise that Defendants are uniquely concentrated in California such that litigating in Delaware would impose an extraordinary hardship.

More fundamentally, transfer would merely shift the inconvenience from one party to another, which is not a sufficient basis for transfer. *See Derry Fin. N.V. v. Christiana Cos.*, 555 F. Supp. 1043, 1046 (D. Del. 1983) ("[W]here a transfer would merely shift the inconvenience from one party to the other …, the plaintiff's choice of forum should not be disturbed."). Wolfspeed's

principal offices, research laboratories, and manufacturing operations are on the East Coast—in Durham, North Carolina; Marcy, New York; and Arkansas. Ex. 1 at 5. Transferring this case from Delaware to California would require Wolfspeed's executives, engineers, and fact witnesses—all of whom are material witnesses—to travel coast-to-coast rather than make a relatively short journey to Delaware.

Defendants' own litigation conduct is also revealing on this factor. Prior to the filing of their Motion to Transfer Venue, Defendant Navitas Semiconductor Ireland, LLC filed a patent infringement action against Renesas in the Eastern District of Texas. *See* Ex. 7. Defendants are represented in that Texas action by the very same counsel who appear in this case. *Id.* at 38. The court recently addressed an analogous situation in *Nokia of America Corp. v. Acer Inc.*, 2026 WL 2085863 (D. Del. July 20, 2026), holding that a movant's claimed convenience rationale "rings hollow" when the movant has voluntarily chosen to litigate in a geographically distant forum. *Id.* at *7. The same principle applies here. If Defendants can manage patent litigation in Marshall, Texas—approximately 1,500 miles from Torrance, California—with the same counsel representing them in this case, their claim that Wilmington, Delaware is uniquely inconvenient is difficult to credit.

This factor weighs against transfer.

### E. Factor 5: Convenience of Witnesses Weighs Against Transfer

"With respect to the convenience of the witnesses, it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses 'actually may be unavailable for trial in one of the fora'" that matters for this analysis. *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, 114 F. Supp. 3d 187, 191 (D. Del. 2015) (quoting *Jumara*, 55 F.3d at 879). This requires specificity as to "(1) the particular witness to whom the movant is referring; (2) what

that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will 'actually' be unavailable for trial." *Varian Med. Sys., Inc. v. Elekta AB*, 2016 WL 3341865, at *7 (D. Del. June 8, 2016). General assertions of inconvenience do not satisfy this standard. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena."). Defendants' showing does not meet this standard.

Defendants have not identified a single material witness who would be "actually unavailable" for trial in Delaware. D.I. 20 at 10–12. The showing required to justify any weight being given to witness convenience "varies depending on the type of witness at issue." *Intellectual Ventures (Altera)*, 842 F. Supp. 2d at 756–57. Defendants have failed to make any such showing. D.I. 20 at 10–12. Notably, Defendants rely primarily on their own engineers and technical personnel (D.I. 20 at 10–11)—party witnesses who are subject to Defendants' control ***regardless of forum***. This reliance is unavailing because "[p]arty witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Intellectual Ventures (Altera)*, 842 F. Supp. 2d at 757. To the extent Defendants identify former employees or third-party witnesses, they bear the burden of showing both materiality and actual unavailability in Delaware—a burden they have not met. *See, e.g.*, *id.* at 758 ("[T]here is no evidence from which the Court can conclude that necessary trial witnesses will refuse to appear in Delaware for trial without a subpoena. If such witnesses will not appear at trial, their testimony can always be compelled through a deposition."). Finally, as for any prior art witnesses (D.I. 20 at 11–12), more potential prior art witnesses are located on the East Coast than in California. *See id.* at 3. For

witnesses located in Japan or China, international travel is equally burdensome regardless of venue.

Defendants' argument is also fundamentally flawed because it overlooks Wolfspeed's primary witnesses, namely Wolfspeed's named inventors and engineers, who will testify about the conception, development, and advantages of the patented technology, as well as other Wolfspeed employees with technical knowledge. The research and development underlying the five patents-in-suit primarily originate from Wolfspeed, and such testimony will be critical for trial.

Defendants' argument on Factor 5 amounts to an attempt to shift inconvenience from themselves to Wolfspeed—which is insufficient as a matter of law. Courts have consistently held that merely shifting the inconvenience from one side to the other is not a sufficient ground for changing venue. *See Derry Fin.*, 555 F. Supp. at 1046. The movant bears a heavy burden to demonstrate actual unavailability—not mere inconvenience or speculation—and must provide specificity regarding each witness. Defendants have not met that standard.

This factor weighs against transfer.

**F. Factor 6: Location of Books and Records Weighs Against Transfer**

This factor considers whether relevant documents "could not be produced" in the alternative forum. In modern patent litigation, this factor rarely carries significant weight because "discovery is a local event and trial is a limited event" and "[d]iscovery is largely electronic, with depositions taking place where the deponents reside or work." *C.R. Bard, Inc. v. Angiodynamics, Inc.*, 156 F. Supp. 3d 540, 547 n.6 (D. Del. 2016). In an era in which discovery is overwhelmingly conducted electronically, the physical location of servers and file cabinets has virtually no bearing on the transfer inquiry. *See Cradle IP*, 923 F. Supp. 2d at 699 ("[T]he concepts of 'convenience'

in an electronic age [or] 'home turf' in an age of global economies … are ill-fitting, if not anachronous.").

In any event, Defendants have not identified any books, records, or other tangible evidence that could not be produced in Delaware. D.I. 20 at 12. To the contrary, relevant physical evidence in this case—laboratory notebooks, research reports, design specifications, simulation data, and testing results—is maintained at Wolfspeed's facilities in North Carolina and Arkansas. Ex. 1 at 5. Transfer to California would thus increase—not decrease—the distance between the court and the physical location of this documentation. Accordingly, to the extent the location of records has any relevance in an era of electronic discovery, this factor favors Wolfspeed.

This factor weighs against transfer or is neutral.

## III. PUBLIC INTEREST FACTORS ALSO WEIGH AGAINST TRANSFER

### A. Factor 7: Enforceability of the Judgment Is Neutral

Both this Court and the Central District of California are federal courts fully capable of entering and enforcing any judgment in this patent infringement action. Defendants do not contend otherwise. D.I. 20 at 14. This factor is neutral and does not support transfer.

### B. Factor 8: Practical Considerations Weigh Against Transfer

Practical considerations weigh against transfer. As discussed in Factor 4 above, Defendants' own litigation conduct is informative on this point. Defendant Navitas Semiconductor Ireland, LLC's decision to file a patent infringement action in the Eastern District of Texas—represented by the very same counsel who appear in this case (*see* Ex. 7)—confirms that Defendants have the institutional capacity and willingness to manage geographically dispersed patent litigation—as does their counsel. *See Nokia of Am.*, 2026 WL 2085863, at *7–8.

Additionally, there is no pending related litigation in the Central District of California with which this case could be consolidated. Transfer would not promote judicial efficiency or reduce duplicative proceedings. There are no practical considerations favoring transfer, and the evidence of Defendants' voluntarily dispersed litigation affirmatively weighs against it.

This factor weighs against transfer or is, at worst, neutral.

### C. Factor 9: Court Congestion Does Not Support Transfer

The general civil-docket statistics Defendants cite (D.I. 20 at 13) are a poor measure of how quickly a patent case will proceed to trial; patent-specific statistics are far more probative of the congestion inquiry here. The Central District of California is not a "rocket docket"; to the contrary, it is one of the most heavily congested federal courts in the country, including for patent litigation. *See* Ex. 10 at 1. Recent patent-specific data reports a 31-month median time to trial in the Central District of California, which is actually longer than the 29-month national median for patent cases. *See id.* Thus, the Central District of California cannot reasonably be characterized as a forum in which patent cases are routinely brought to trial on an accelerated schedule.

Nor does the historical data support any assertion that the Central District of California is significantly faster than the District of Delaware for patent litigation. The relative speed of the two districts has fluctuated substantially depending on the year and the particular measure examined. *See* Ex. 11 at 816. For example, while 2023 data showed an advantage for the Central District of California in average time to jury trial, the same data showed precisely the opposite for bench trials: the District of Delaware reached bench trials in an average of approximately 39 months, compared with 53 months in the Central District of California—a 14-month advantage for the District of Delaware. *See id.*

The data does not establish a consistent or significant speed advantage for the Central District of California. *See* Ex. 12 at 3. Defendants' contrary suggestion (D.I. 20 at 13) relies on selective and irrelevant statistics and ignores the substantial year-to-year and case-type variation reflected in the historical patent-specific data. The patent-specific statistics do not support giving meaningful weight to the proposition that transfer would materially accelerate the resolution of this case. *See Textron Innovations Inc. v. The Toro Co.*, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer.").

This factor is neutral and does not support transfer.

**D. Factor 10: Local Interest Weighs Against Transfer**

Delaware has a substantial local interest in adjudicating this dispute in which every party is a Delaware entity, making it a quintessential Delaware "local controversy" that Delaware courts have a significant interest in resolving. In *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472 (D. Del. 2011) (hereinafter, "*Intellectual Ventures (Checkpoint)*"), the court expressly held that "Delaware's interests are substantial and must be accorded at least equal weight" to those of the competing forum, citing *Autodesk Canada Co. v. Assimilate, Inc.*, 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009), for the proposition that "Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations." *Intellectual Ventures (Checkpoint)*, 797 F. Supp. 2d at 486; *see also, e.g.*, *Intellectual Ventures (Altera)*, 842 F. Supp. 2d at 760 ("Delaware has a strong interest in adjudicating disputes among its corporate citizens."); *Mallinckrodt*, 670 F. Supp. 2d at 357 (holding that a Delaware corporation that accepts the benefits of Delaware incorporation "cannot complain once another corporation brings suit against it in Delaware"). Indeed, when all parties

are Delaware entities, the interest is even stronger because each of them "willingly submitted to suit [in Delaware], which weighs in favor of keeping the litigation in Delaware." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011); *see also ADE Corp.*, 138 F. Supp. 2d at 572 ("[O]ne aspect of a company's decision to incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit itself to the jurisdiction of the courts in this state for the purposes of resolving this type of commercial dispute.").

Defendants' argument that California alone has a "significant interest" in this case (D.I. 20 at 14) is at odds with the facts and the law. Wolfspeed's claims did not arise in California—they are nationwide in scope and not tied specifically to California. D.I. 24 at ¶ 35. Indeed, in patent litigation, "the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope." *Varian Med. Sys., Inc. v. Elekta AB*, 2016 WL 3341865, at *10 (D. Del. June 8, 2016). Nor are Defendants a "local" company in any sense of the term that might support heightened California interests. Ex. 6 at 7, 12; *see, e.g.*, *Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, 2020 WL 3640065, at *7 (D. Del. July 6, 2020) ("[T]he Court finds it relevant that Defendant is a global company with a significant number of employees throughout the world. This suggests that Defendant is not a 'local' company in the Northern District of California such that local interests are, in fact, implicated here."). Any interest that California may have does not rise to the level of "significant interest" that might weigh this factor in favor of transfer. Defendants' leased office space and minority of employees in California (Ex. 6 at 12, 35) do not outweigh Delaware's significant interest in deciding disputes between its corporate citizens. *See Intellectual Ventures (Checkpoint)*, 797 F. Supp. 2d at 486 ("Delaware's interests are substantial and must be accorded at least equal weight to those of the Northern District of California.").

This factor weighs against transfer.

### E. Factor 11: Public Policies of the Fora Weigh Against Transfer

It is well established that "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts." *VLSI Tech.*, 2018 WL 5342650, at *9. "The public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Intellectual Ventures (Altera)*, 842 F. Supp. 2d at 760 (citation omitted). "Delaware promotes itself as a place that entities should choose as their corporate home, and in doing so, touts itself as a forum well-positioned to help resolve business disputes." *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 2015 WL 4778828, at *15 (D. Del. Aug. 13, 2015).

This public policy interest is particularly strong in this case because every party—Wolfspeed and all four Defendants—is a Delaware entity. Ex. 1 at 5; Exs. 2–5. "Delaware has a strong interest in adjudicating disputes among its corporate citizens." *Intellectual Ventures (Altera)*, 842 F. Supp. 2d at 760. Delaware's commitment to providing a dispute-resolution forum for its own corporate citizens applies with maximum force when the entire controversy is among Delaware entities. To grant transfer under these circumstances would undermine the very policy interest that makes Delaware an attractive state of incorporation.

California, by contrast, has no comparable public policy interest in adjudicating this dispute. Although California undoubtedly has an interest in cases involving companies operating within its borders, that generalized interest is less compelling than Delaware's specific and well-documented policy of encouraging its corporate citizens to resolve their disputes in Delaware courts. California's interest is further diminished by the fact that Defendants do not own real property in California (Ex. 6 at 35) and contract out their fabrication to third-party suppliers located around the world. *Id.* at 6, 8, 9, 37, 56. Defendants' connection to California is that of a "product

design house" leasing office space (*id.* at 6)—not a deeply rooted manufacturing enterprise whose operations are tied to a single locale. The public policy factor favors retaining this case in Delaware.

This factor weighs against transfer.

### F. Factor 12: Familiarity with Applicable Law Is Neutral

This is a federal patent infringement action governed exclusively by federal statutory and decisional law. No state-law claims or defenses are at issue, rendering this factor—which considers the trial court's familiarity with applicable state law—inapplicable. To the extent familiarity with governing law has any bearing, Delaware is among the most experienced patent forums in the nation, handling a disproportionate share of the country's patent litigation and possessing deep expertise in the complex technical and legal issues that characterize such cases.

This factor does not favor transfer.

## CONCLUSION

For all of the foregoing reasons, Defendants have failed to carry their heavy burden of establishing that the balance of convenience "strongly" favors transfer to the Central District of California under 28 U.S.C. § 1404(a). A systematic analysis of the *Jumara* factors demonstrates that all but one weigh against transfer or are neutral—and none weighs strongly in Defendants' favor. At most, Defendants can point to their own preference for litigating in California, which falls far short of the showing required to justify transfer. Wolfspeed's deliberate choice to litigate in the state of incorporation of every party to this dispute—a choice entitled to "paramount consideration"— should be respected.

The Court should deny Defendants' Motion to Transfer Venue.

*Of Counsel*

Blaney H. Harper
Nicole A. Paige
JONES DAY
2727 North Harwood Street, Suite 600
Dallas, Texas 75201
(214) 220-3939
bharper@jonesday.com
npaige@jonesday.com

Eamon M. Heaney
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
(650) 739-4164
eheaney@jonesday.com

Evan P. Tassis
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
etassis@jonesday.com

Dated: September 23, 2026

ASHBY & GEDDES

*/s/ Jeffrey J. Lyons*

Andrew C. Mayo (#5207)
Jeffrey J. Lyons (#6437)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
jlyons@ashbygeddes.com

*Attorneys for Plaintiff Wolfspeed, Inc.*