fIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WOLFSPEED, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 26-818-GBW |
| v. | ) | |
| | ) | |
| NAVITAS SEMICONDUCTOR CORPORATION, NAVITAS SEMICONDUCTOR IRELAND, LLC, GENESIC SEMICONDUCTOR LLC, and NAVITAS SEMICONDUCTOR USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**WOLFSPEED, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

*Of Counsel:*

Blaney H. Harper
Nicole A. Paige
JONES DAY
2727 North Harwood Street, Suite 600
Dallas, TX 75201
(214) 220-3939

Evan P. Tassis
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939

Eamon M. Heaney
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939

ASHBY & GEDDES
Andrew C. Mayo (#5207)
Jeffrey J. Lyons (#6437)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
jlyons@ashbygeddes.com

*Attorneys for Plaintiff*

Dated: November 10, 2026

## TABLE OF CONTENTS

**Page**


BACKGROUND .......... 2

ARGUMENT .......... 3

I. LEGAL STANDARD .......... 3

II. DEFENDANTS' MOTION TO STAY IS PREMATURE .......... 4

III. A STAY WILL NOT SIMPLIFY THE CASE. .......... 8

  A. No Estoppel Attaches to EPR, So Defendants Can Relitigate the Same Prior Art Here. .......... 9

  B. EPR Permits Amendment, Making Claim Survival the Likeliest Outcome. .......... 11

  C. Defendants' Own Statistics Show That This Case Will Come Back .......... 12

  D. EPR Will Not Resolve Infringement, Damages, or Defenses Outside Its Limited Scope. .......... 14

IV. THE EARLY STAGE OF THE CASE DOES NOT JUSTIFY AN OPEN-ENDED STAY .......... 15

V. A STAY WOULD HARM WOLFSPEED AS A DIRECT COMPETITOR. .......... 16

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Page**

**CASES**

*APTIV Techs. AG v. Microchip Tech., Inc.*,
2026 WL 632231 (D. Del. Mar. 6, 2026) ........................................8, 10

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
2010 WL 3522327 (D. Del. Sep. 2, 2010) ........................................4, 5

*Benefit Funding Sys. LLC v. Advance Am., Cash Advance Ctrs., Inc.*,
2013 WL 3296230 (D. Del. June 28, 2013) ........................................18

*Boston Sci. Corp. v. Cordis Corp.*,
777 F. Supp. 2d 783 (D. Del. 2011) ........................................16

*British Telecomms. PLC v. IAC/InterActiveCorp*,
2019 WL 4740156 (D. Del. Sep. 27, 2019) ........................................4

*British Telecomms. PLC v. IAC/InterActiveCorp*,
2020 WL 5517283 (D. Del. Sep. 11, 2020) ........................................5

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
107 F. Supp. 2d 489 (D. Del. 2000), *aff'd*, 388 F.3d 858 (Fed. Cir. 2004) ........................................12

*Cellectis S.A. v. Precision Biosciences*,
883 F. Supp. 2d 526 (D. Del. 2012) ........................................4, 5

*Consumeron v. MapleBear Inc.*,
2023 WL 3434002 (D. Del. May 12, 2023) ........................................15

*Cooper Notification, Inc. v. Twitter, Inc.*,
2010 WL 5149351 (D. Del. Dec. 13, 2010) ........................................18

*Corteva Agriscience LLC v. Monsanto Co.*,
2023 WL 3119968 (D. Del. Apr. 27, 2023) ........................................16

*Cronos Techs., LLC v. Expedia, Inc.*,
2016 WL 1089752 (D. Del. Mar. 21, 2016) ........................................14, 15, 18, 19

*Dental Monitoring v. Get-Grin Inc.*,
2024 WL 1603403 (D. Del. Apr. 9, 2024) ........................................17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
2009 WL 9506927 (E.D. Tex. Dec. 18, 2009)....................10

*Ever Win Int'l Corp. v. RadioShack Corp.*,
902 F. Supp. 2d 503 (D. Del. 2012).................... passim

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
100 F. Supp. 3d 357 (D. Del. 2015)....................4

*Freeman v. Minn. Mining & Mfg. Co.*,
661 F. Supp. 886 (D. Del. 1987)....................5

*In re Bain*,
Reexam. No. 90/019,604, Decision on Petition (Nov. 21, 2025)....................6

*In re Vivint, Inc.*,
14 F.4th 1342 (Fed. Cir. 2021)....................6

*Intellectual Ventures II LLC v. Kemper Corp.*,
2016 WL 7634422 (E.D. Tex. Nov. 7, 2016)....................10

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
2019 WL 3943058 (D. Del. Aug. 21, 2019)....................9, 16

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
2020 WL 6270776 (D. Del. Oct. 26, 2020)....................16

*K. Mizra LLC v. NXP USA, Inc.*,
No. 7:25-cv-00557-DC-DTG, D.I. 48 (W.D. Tex. Oct. 26, 2026) (Ex. 3)....................11

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................3, 4, 18

*Longhorn HD LLC v. NetScout Sys., Inc.*,
2022 WL 71652 (E.D. Tex. Jan. 6, 2022)....................15, 18

*Minerva Surgical, Inc. v. Hologic, Inc.*,
2021 WL 1840645 (D. Del. May 7, 2021)....................16, 17

*Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*,
2011 WL 5523315 (D. Del. Nov. 14, 2011)....................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Neste Oil Oyj v. Dynamic Fuels, LLC*, 2013 WL 3353984 (D. Del. July 2, 2013) ....... 5, 18

*Neste Oil Oyj v. Dynamic Fuels, LLC*, 2013 WL 424754 (D. Del. Jan. 31, 2013) ....... 17

*Oracle Corp. v. Parallel Networks, LLP*, 2010 WL 3613851 (D. Del. Sep. 8, 2010) ....... 14

*Premier Int'l Assocs. LLC v. Hewlett-Packard Co.*, 554 F. Supp. 2d 717 (E.D. Tex. 2008) ....... 10

*SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255 (D. Del. Jan. 11, 2013) ....... passim

*TC Tech. LLC v. Sprint Corp.*, 2021 WL 4521045 (D. Del. Oct. 4, 2021) ....... 4, 5, 15, 16

*VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 807588 (E.D. Tex. Feb. 27, 2014), *rev'd on other grounds*, 759 F.3d 1307 (Fed. Cir. 2014) ....... 12

**STATUTES**

35 U.S.C. § 282 ....... 1

35 U.S.C. § 302 ....... 9, 13

35 U.S.C. § 303 ....... 9, 13

35 U.S.C. § 304 ....... 9, 13, 14

35 U.S.C. § 305 ....... 9, 11

35 U.S.C. § 306 ....... 9

35 U.S.C. § 307 ....... 9

35 U.S.C. § 315 ....... 5, 9

35 U.S.C. § 316 ....... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

35 U.S.C. § 325 ....................6

**OTHER AUTHORITIES**

37 C.F.R. § 1.181 ....................6

37 C.F.R. § 1.550 ....................9

MPEP § 2242 ....................4

MPEP § 2243 ....................13

MPEP § 2246 ....................13, 14

MPEP § 2254 ....................9

USPTO, *Pre-Order Procedure Regarding Substantial New Question Determination in Ex Parte Reexamination Proceedings*, Official Gazette Notice (Apr. 2026) ....................12, 13

Plaintiff Wolfspeed, Inc. ("Wolfspeed") opposes the Motion to Stay (the "Motion") (D.I. 33) filed by Defendants Navitas Semiconductor Corp., Navitas Semiconductor Ireland, LLC, GeneSiC Semiconductor LLC, and Navitas Semiconductor USA, Inc. (collectively, "Defendants").

One week after filing five *ex parte* reexamination ("EPR") requests, Defendants asked this Court to stay this case indefinitely. D.I. 34 at 1–2, 9. Those EPR requests have not been tested in any way. The Patent Office has not decided whether to order reexamination of any claim, and no examiner has issued a single office action. *Id.* at 1, 7. Yet, despite the statutory presumption of validity in 35 U.S.C. § 282, and based on untested patentability allegations, Defendants ask the Court to halt litigation between direct competitors for an indefinite time. *Id.* at 8–9. Such a request fails to meet Defendants' heavy burden. Defendants' own statistics show that claims survive in the vast majority of reexaminations. *Id.* at 3, 5 (citing Ex. 6 at 2). The realistic outcome of a stay is that this case returns to this Court years from now. Moreover, Defendants' Motion mischaracterizes EPR and its effect on the litigation here. The Motion treats EPR as interchangeable with *inter partes* review ("IPR"). *Id.* at 3, 8. But unlike IPR, EPR carries no estoppel. Defendants never mention estoppel. *See generally id.* Defendants will be free to repeat every invalidity argument they made to the Patent Office in post-reexamination litigation. Meanwhile, Defendants would remain free to continue the infringement alleged here. *See* D.I. 24. Defendants' Motion avoids these realities.

The Motion should be denied for three reasons. First, it is premature because the merits of Defendants' reexamination requests have not been tested at all. Second, a stay is unlikely to simplify the case. It is currently unknown which claims—if any—will be reexamined, when or whether such reexamination will occur and which claims will be asserted at trial. Defendants

simply cannot show that any reexamination will even reach the claims that matter in the litigation. Further, no estoppel attaches to EPR, so whatever happens before the Patent Office, Defendants remain free to relitigate the same prior art here. Asserted claims will almost certainly survive reexamination. And EPR cannot resolve infringement, damages, or the many other issues in this case. Third, a stay of indefinite length as sought here would unduly prejudice Wolfspeed, which competes directly with Defendants in the wide-bandgap semiconductor market.

## BACKGROUND

Wolfspeed, previously known as Cree, Inc., has spent nearly four decades—since its founding in 1987—innovating in wide-bandgap semiconductors (materials with a larger energy gap that enable high-temperature, high-voltage, and high-frequency applications). D.I. 24 ¶¶ 12, 13; D.I. 25 at 2. Wolfspeed focuses on silicon carbide ("SiC") materials for power and radio frequency ("RF") applications and SiC devices for power applications. D.I. 24 ¶ 13. Its product families include gallium nitride ("GaN") epitaxy on SiC wafer materials, SiC power materials, and SiC power devices. *Id.* ¶ 14. Both the power materials products and power devices are used in defense, AI data centers, motor drives, power supplies, and transportation applications, and Wolfspeed's RF materials products are used in military communications, radar, satellite, and telecommunication applications. *Id.* Wolfspeed operates a vertically integrated, domestic SiC manufacturing platform supporting material growth, device fabrication, packaging, and validation. *Id.* ¶ 15. Its innovations, reflected in the five patents-in-suit, represent important technologies for cleaner, more efficient energy. *Id.* ¶ 16. Four of the five patents-in-suit were conceived and reduced to practice by Wolfspeed engineers at Wolfspeed facilities in North Carolina and Arkansas. D.I. 25 at 3.

Defendants sell GaN-based and SiC-based power semiconductor devices—including GaNFast, GaNSlim, GaNSafe, and GaN FET products, GeneSiC MOSFETs, and SiCPAK

modules—that practice Wolfspeed's patented inventions. D.I. 24 ¶ 33. Defendants did so with knowledge of Wolfspeed's patents. On April 10, 2026, Wolfspeed notified Defendants of their infringement of the patents-in-suit; Defendants acknowledged that letter on April 23, 2026. *Id.* ¶¶ 37–38. On May 11, 2026, Wolfspeed sent a second letter with claim charts mapping exemplary claims to Defendants' products. *Id.* ¶ 39. Rather than resolve the dispute, Defendants kept selling the accused products, and Wolfspeed was forced to file suit. *Id.* ¶¶ 35, 44. Defendants' request for a stay has nothing to do with simplifying this case. It is an effort to keep capturing, for as long as possible, market ground from which Wolfspeed has the legal right to exclude them.

Wolfspeed filed this action on July 7, 2026. D.I. 1. Wolfspeed filed its First Amended Complaint ("FAC") on September 18, 2026. D.I. 24. Defendants have moved to transfer (D.I. 19) and to dismiss the FAC (D.I. 29). While those motions were pending, Defendants filed EPR requests on all claims of the five patents-in-suit. D.I. 34 at 2; D.I. 34-1, Exs. 1–5. They filed the requests between October 16 and 19, 2026. *Id.* The following week, on October 27, 2026, Defendants moved to stay. D.I. 33; D.I. 34.

## ARGUMENT

### I. LEGAL STANDARD

A stay is discretionary, and the movant bears a heavy burden to justify one. Under the Supreme Court's longstanding standard, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Courts in this District apply that standard to motions to stay pending reexamination: "where there is a 'fair possibility' that a stay would prove detrimental to the non-movant, and the movant is unable to demonstrate a clear case of hardship or inequity, granting that stay is likely to result in undue prejudice to the non-movant." *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255,

at *9 n.12 (D. Del. Jan. 11, 2013) (denying stay) (citation omitted). The added cost of litigating while the Patent Office acts is not the kind of hardship that qualifies. *Id.* And a stay that lacks defined limits is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits." *Landis*, 299 U.S. at 257.

Courts in this District weigh three stay factors: (1) whether a stay will simplify the issues for trial; (2) the status of the litigation; and (3) whether a stay would unduly prejudice the non-movant or give the movant a clear tactical advantage. *See British Telecomms. PLC v. IAC/InterActiveCorp*, 2019 WL 4740156, at *2 (D. Del. Sep. 27, 2019). These factors "merely provide[] general guidance" and are "not a rigid template for decision"; the question turns on "the totality of the circumstances." *TC Tech. LLC v. Sprint Corp.*, 2021 WL 4521045, at *4 (D. Del. Oct. 4, 2021). A stay pending reexamination is never automatic: "[w]hether or not to stay litigation pending reexamination by the PTO of the patents-in-suit is a matter left to the Court's discretion." *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 360 (D. Del. 2015). And where, as here, the Patent Office has not acted, "only those reexamination proceedings that have been substantially completed will weigh in favor of a stay." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 2010 WL 3522327, at *3 (D. Del. Sep. 2, 2010) (denying stay); *accord Cellectis S.A. v. Precision Biosciences*, 883 F. Supp. 2d 526, 534 n.12 (D. Del. 2012).

## II. DEFENDANTS' MOTION TO STAY IS PREMATURE

Defendants seek a stay pending proceedings that do not yet exist. They filed their EPR requests barely a week before moving to stay. D.I. 34 at 1–2, 7. The Patent Office will not decide whether to order reexamination until at least January 2027. *Id.* at 1, 7. Even where EPR is ordered, the order is not a determination on the merits. A substantial new question of patentability may exist even without a *prima facie* case of unpatentability. MPEP § 2242. For that reason, "the examiner's findings upon instituting the reexamination do not necessarily provide as strong a basis

for concluding that [the claim] is likely to be invalidated or amended." *British Telecomms. PLC v. IAC/InterActiveCorp*, 2020 WL 5517283, at *10 (D. Del. Sep. 11, 2020). And even if reexamination is ordered, no examiner will address the merits until a first action on the merits ("FAOM"), many months later. Defendants fail to explain why the Court should act before the Patent Office has said anything about the actual merits of patentability. *See* D.I. 34 at 4–5, 7–8.

"Only those reexamination proceedings that have been substantially completed will weigh in favor of a stay." *Belden*, 2010 WL 3522327, at *3; *Cellectis*, 883 F. Supp. 2d at 534 n.12. Here, the proceedings have not begun and no actual evaluation of patentability will be made for months. Courts therefore decline to halt litigation based on the mere pursuit of *ex parte* reexamination, and instead may allow the case to proceed while the PTO process runs in parallel. *See Freeman v. Minn. Mining & Mfg. Co.*, 661 F. Supp. 886, 887–88 (D. Del. 1987) (explaining that, if a stay pending reexamination were sought, the court "would not stay this case," and that the court would "continue to hear this case" while not interfering with the defendant's reexamination request); *see also Cellectis*, 883 F. Supp. 2d at 533–34 (denying stay pending *ex parte* reexamination); *TC Tech.*, 2021 WL 4521045, at *11 (granting stay only after a non-final office action had rejected every asserted claim). Defendants' Motion offers nothing more than the mere allegations of unpatentability recited in their requests. Their cited statistics do not change that.

Defendants' reliance on *Neste Oil Oyj v. Dynamic Fuels, LLC*, 2013 WL 3353984, at *2 (D. Del. July 2, 2013), is misplaced. Defendants cite it for the proposition that a stay may issue before the Patent Office acts. D.I. 34 at 5, 8. But *Neste* involved a pending petition for IPR, not an EPR request. That difference matters and makes *Neste* inapposite to the present litigation. If IPR is instituted, the petitioner is estopped from relitigating grounds it raised or reasonably could have raised. *See* 35 U.S.C. § 315(e)(2). No such estoppel attaches to EPR. Defendants never

address this fundamental difference anywhere in their Motion. *See generally* D.I. 34. Yet this difference means that Defendants remain free to reassert here in litigation every reference and argument they present to the Patent Office. *See Ever Win Int'l Corp. v. RadioShack Corp.*, 902 F. Supp. 2d 503, 506 (D. Del. 2012). Such freedom eviscerates Defendants' arguments concerning simplification of issues. *See infra* Section III.A.

Defendants also assure the Court that, if the requests are denied, "the stay would swiftly lift." D.I. 34 at 8. But their own proposed relief unmasks Defendants' true goal—they ask the Court to stay the case now and then "extend the stay if reexamination is ordered." *Id.* at 9. Defendants ask for automatic extension even though no Patent Office action on the merits has issued. In effect, Defendants seek an open-ended stay whose justification has not yet materialized.

Defendants' Motion and its request for an automatic extension are fundamentally flawed because they are based on an incorrect premise: that is, reexamination will necessarily go forward once an order issues. The relevant rules in the Patent Office make clear that is not the case. Even if reexamination is ordered, Wolfspeed may petition the USPTO Director under 37 C.F.R. § 1.181 to terminate the reexamination proceeding under 35 U.S.C. § 325(d). The "Patent Office has authority to reconsider its decision ordering *ex parte* reexamination based on § 325(d)." *In re Vivint, Inc.*, 14 F.4th 1342, 1351 (Fed. Cir. 2021).

For example, in *In re Bain*, reexamination was ordered but the Director, through the Office of Patent Legal Administration, granted the patent owner's petition and terminated reexamination on November 21, 2025. *In re Bain*, Reexam. No. 90/019,604, Decision on Petition at 11 (Nov. 21, 2025) (Ex. 1). That November 21, 2025, decision terminating the then-pending reexamination came nearly ***one year*** after reexamination had been ordered on November 26, 2024. *Id.* at 4. The reexamination process in that case did not even reach the stage of an action on the merits of the

patentability challenge. Accordingly, a termination petition may eliminate reexamination altogether or further postpone substantive action in the reexamination. Defendants' presumption in their Motion that an order of reexamination will provide this Court with any guidance on the patentability of the patents at issue, or when such guidance may come, is untenable.

Defendants' Motion is premature for another reason: no one can say at this stage whether any reexamination order will even encompass the claims that will actually be at issue in this litigation. No scheduling order has been entered, and the parties have not yet exchanged contentions or otherwise identified the asserted claims that will be tried. *See* D.I. 34 at 1, 6. Defendants' reexamination requests challenge every claim of the five patents-in-suit. *Id.* at 2. But EPR is claim-specific, and even if the reexamination proceeds, the Patent Office may order reexamination of some challenged claims and not others. *See infra* Section III.C. The claims Wolfspeed ultimately asserts may therefore be ones for which the Patent Office finds no substantial new question of patentability and that will never be reexamined. Defendants thus ask the Court to assume both that reexamination will be ordered and that it will be ordered on the claims that matter to this case—neither of which can be known today. Until the asserted claims are identified and the Patent Office has acted on Defendants' requests, there is no basis to conclude that a stay would simplify anything.

Further, according to the USPTO's most recent statistics, the average time from filing an EPR request to FAOM is seven months. *See* Ex. 2 at 2. That wait is more likely to grow than shrink. As Defendants themselves explain, recent changes at the Patent Office have driven a sharp decline in IPR petitions and a corresponding surge in EPR requests, which reached record levels earlier this year. D.I. 34 at 3 (citing Ex. 7 at 1). A growing EPR docket means longer waits for examiner action. The USPTO's data already reflects that trend: the average time from filing to

FAOM rose from 6.33 months in the third quarter of fiscal year 2026 to 6.98 months in the fourth. *See* Ex. 2 at 2. By Defendants' own account, their requests will remain untested well into 2027.

Defendants ask the Court to halt this case for an indefinite time based on allegations in EPR requests that no examiner has yet evaluated, for reexaminations that have not been ordered, may not go forward, and, even if they go forward, may not reach many of the asserted claims, which are at present unknown. *See* D.I. 34 at 9. The Motion is premature and Defendants have wholly failed to meet their burden to appropriately justify such a request. The Motion should be denied.

## III. A STAY WILL NOT SIMPLIFY THE CASE.

Defendants argue that "all 'possible outcomes' of reexamination" would simplify the case, and that the reexaminations "can only simplify the patent issues for trial." D.I. 34 at 2, 5–6 (quoting *Ever Win*, 902 F. Supp. 2d at 505–06). That premise is wrong. As a court in this District recently explained, "while EPRs offer the theoretical possibility of narrowing the case, *ex ante*, it is almost impossible to say that an EPR will simplify issues for trial, rather than just changing or deferring those issues." *APTIV Techs. AG v. Microchip Tech., Inc.*, 2026 WL 632231, at *3 (D. Del. Mar. 6, 2026). That is doubly true here. Defendants cannot claim simplification *today* for two parallel and independent reasons. First, both sides of the relevant comparison are unknown: which claims—if any—will be reexamined, and which claims will be asserted. The Patent Office has not ordered reexamination of any claim, and no contentions have been exchanged, so neither Defendants nor the Court can know whether any reexamination order will reach the claims that will actually be tried. *See supra* Section II; *infra* Section III.C. Second, no estoppel attaches to EPR, so even claims the Patent Office does review will come back with every invalidity argument still available to Defendants. *See infra* Section III.A. Either reason alone defeats Defendants' simplification argument; together, they foreclose it.

Defendants' analysis of simplification is misguided because they treat EPR as if it were an IPR, asserting that the two have "considerable overlap" and comparing reexamination pendency to "an 18-month IPR proceeding." D.I. 34 at 3, 8. But the two proceedings are fundamentally different in the specific aspects that determine whether a stay will simplify anything. Defendants do not address those differences. *See id.* at 3–8. For example, IPR is subject to a hard statutory time limit; EPR has no statutory deadline at all. *Compare* 35 U.S.C. § 316(a)(11), *with* 35 U.S.C. § 305. Moreover, an IPR petitioner remains an active party throughout the proceeding, submitting expert evidence, cross-examining declarants, and participating in an oral hearing. An EPR requester does not. *See* 37 C.F.R. § 1.550(g); MPEP § 2254. Once reexamination is ordered, the proceeding is between the patent owner and the Office, and the requester must step aside. *See id.* EPR therefore produces no adversarial record—no expert cross-examination, no hearing, and no tested evidence. Nor do Defendants acknowledge that *Ever Win*, the very case they quote, found the simplification factor neutral, not favorable to a stay. 902 F. Supp. 2d at 507. But most importantly, unlike IPR, no estoppel attaches to EPR, as discussed below. *Compare* 35 U.S.C. § 315(e), *with* 35 U.S.C. §§ 302–307. By relying on IPR comparisons rather than the EPR proceedings actually at issue, Defendants fail to carry their burden of showing that a stay would simplify this case.

### A. No Estoppel Attaches to EPR, So Defendants Can Relitigate the Same Prior Art Here.

As explained in the *Ever Win* case, "should Defendant's arguments as to certain prior art references prove unsuccessful in the PTO, Defendant will have a second chance to assert those prior art references in this Court…. [T]hat is always true with regard to *ex parte* reexamination proceedings." 902 F. Supp. 2d at 506. The absence of estoppel "has the potential to increase rather than reduce the complexity of the validity issues that may come before the Court." *IOENGINE,*

*LLC v. PayPal Holdings, Inc.*, 2019 WL 3943058, at *11 (D. Del. Aug. 21, 2019) (quoting *Intellectual Ventures II LLC v. Kemper Corp.*, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016)).

The asymmetry between the relevant aspects of an EPR and an IPR undercuts any claimed simplification. A defendant whose arguments fail before the EPR examiner loses nothing; it simply brings the same arguments to this Court. As a court in this District recently explained:

> EPRs stand in contrast to IPRs. IPRs have rigid statutory timetables. They have binary outcomes. And they estop parties from raising in litigation arguments that they made before the PTAB. EPRs offer none of that certainty. A stay pending an EPR therefore kicks the can down the road without any clarity about how long the road will be or even what route the road will follow after the detour to the PTO.

*APTIV*, 2026 WL 632231, at *3. Estoppel matters so much to simplification that courts have required the movant's agreement to IPR-like estoppel prior to granting a stay pending EPR. *See, e.g.*, *Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, 2011 WL 5523315, at *1 (D. Del. Nov. 14, 2011); *Premier Int'l Assocs. LLC v. Hewlett-Packard Co.*, 554 F. Supp. 2d 717, 725 (E.D. Tex. 2008) (granting stay pending reexamination only as to defendants that stipulated not to challenge validity based on prior art submitted in reexamination); *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 2009 WL 9506927, at *2 (E.D. Tex. Dec. 18, 2009) (collecting cases denying stays "in absence of a stipulation," and explaining that, without one, "a defendant can reargue issues of invalidity that were considered during reexamination"). Defendants have offered no such agreement here. *See generally* D.I. 34.

Even if Defendants had offered such a stipulation concerning estoppel, that act still would not cure the prejudice to Wolfspeed. A stipulation addresses only the scope of the invalidity issues that may later be relitigated; it does nothing to offset the years of delay in enforcing Wolfspeed's patent rights while the reexamination runs its course. *See EON*, 2009 WL 9506927, at *2–3 (denying stay despite defendant's offered stipulation because stipulations "alleviate, though do not eliminate," these concerns, and the lengthy delay of reexamination "can contribute to prejudice

and place a plaintiff at a tactical disadvantage"); *K. Mizra LLC v. NXP USA, Inc.*, No. 7:25-cv-00557-DC-DTG, D.I. 48 at 2–3 (W.D. Tex. Oct. 26, 2026) (denying stay pending *ex parte* reexamination and explaining that, "[a]lthough the defendant agrees to be estopped from using any of the prior art in the *ex parte* reexaminations in this case ..., the stipulation does not eliminate potential prejudice to the plaintiff") (Ex. 3).

### B. EPR Permits Amendment, Making Claim Survival the Likeliest Outcome.

In a further distinction from an IPR, EPR also allows the patent owner to both amend its claims and add new (narrower) ones. 35 U.S.C. § 305. Amendment makes it far more likely that claims will emerge from reexamination intact or narrowed rather than cancelled. Defendants' own statistics confirm that this is the most common result. *See* D.I. 34 at 3, 5 (citing Ex. 6 at 2) (61.0% of reexaminations end with claims changed). Defendants mischaracterize that figure as a win. They lump changed claims together with cancelled ones to arrive at a 77% figure and declare that "Wolfspeed's odds of escaping reexamination unscathed are grim." *Id.* at 1, 5. But a changed claim is not a cancelled one. Surviving claims, whether amended or not, would return to this Court with infringement, damages, and Defendants' reasserted invalidity defenses all still to be decided. Together, the absence of estoppel and the availability of amendment mean that a stay cannot be counted on to simplify anything. The far likelier result is that the parties will be back before this Court after lengthy reexamination and appeal, litigating the same disputes.

The nature of any amendments also means that proceeding with the litigation here will not waste the parties' or the Court's resources. In EPR, a patent owner may only narrow its claims. The statute forbids any "amended or new claim enlarging the scope of a claim of the patent." 35 U.S.C. § 305. Any claim that emerges from reexamination will therefore be no broader than the claims litigated here. Work done on the original claims—on the accused products, the technology, the prior art, and damages—will carry forward to the claims that survive. And whatever

Wolfspeed surrenders before the Patent Office to secure an amended claim, it cannot reclaim in this Court. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 107 F. Supp. 2d 489, 493 (D. Del. 2000), *aff'd*, 388 F.3d 858 (Fed. Cir. 2004). The scope of this case can only shrink, not grow, as a result of reexamination. There is thus no risk that parallel litigation will be spent on claims that later expand beyond what was litigated. And if an amendment or statement during reexamination bears on the meaning of a claim term, the Court can address it through targeted supplemental claim construction briefing limited to the affected terms. *See, e.g.*, *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 807588, at *3 (E.D. Tex. Feb. 27, 2014) ("To the extent any further statements of Plaintiff's or amendments to claims may affect the Court's claim construction, such is fully remediable with supplemental claim constructions."), *rev'd on other grounds*, 759 F.3d 1307 (Fed. Cir. 2014). That is a far more efficient course than suspending the entire case in anticipation of amendments that may never be made.

**C. Defendants' Own Statistics Show That This Case Will Come Back.**

Defendants rely on a 92.7% cumulative grant rate for EPR requests since 1981. They multiply that rate to allege that there are "only 2 chances in a million" that all five requests will be denied. D.I. 34 at 4–5 (citing Ex. 6 at 1). That figure is wrong and out of date. The 92.7% rate reflects cumulative data only through fiscal year 2025. It predates the Patent Office's April 2026 pre-order procedure, which for the first time permits a patent owner to oppose a request before the Office decides whether to order reexamination. *See* USPTO, *Pre-Order Procedure Regarding Substantial New Question Determination in Ex Parte Reexamination Proceedings*, Official Gazette Notice (Apr. 2026) (available at https://www.uspto.gov/sites/default/files/documents/og-preorder-snq-apr2026.pdf). Under that procedure, the patent owner may respond to the EPR request and explain why the request fails to raise a substantial new question of patentability; the

requester has no right to reply. *See id.*[1]

Since the new procedure in the Patent Office took effect, grant rates have dropped sharply. In May 2026, the grant rate fell to just 69.8%. Ex. 4 at 10. As one recent analysis put it, a requester "should no longer budget on the assumption that an order is nearly automatic." *Id.* Defendants' "2 chances in a million" figure is thus entirely wrong. And in any event, that hypothetical figure addresses the wrong question. The question is not whether *every* EPR request will be denied, but whether *any* of Defendants' five requests will be denied. If even one patent is not reexamined, this case must proceed on that patent regardless of a stay. The alleged efficiency of EPR then disappears. Applied correctly, the current grant rate shows that it is more likely than not—more than an 83% chance—that at least one of the five requests will be denied. Even Defendants' outdated 92.7% rate yields roughly a one-in-three chance. Defendants' hypothetical arithmetic also treats each request as an independent coin flip. It says nothing about the merits of their five requests. Those requests are not routine. In the '418 request, for example, Defendants concede that their primary reference, Hoshi, "was before the Office during the original examination, including in forming a rejection." D.I. 34-1, Ex. 1 at 1.

Moreover, even an order granting a request would not mean that every challenged claim will be reexamined, much less cancelled. EPR is claim-specific. The Patent Office determines whether a substantial new question of patentability is raised as to each claim identified in the request. Reexamination then "will generally be limited to the claim(s) identified by the request for which a substantial new question is raised." USPTO, *Pre-Order Procedure Regarding Substantial New Question Determination in Ex Parte Reexamination Proceedings*, Official Gazette Notice (Apr. 2026) at 3; *see* 35 U.S.C. §§ 302–304; MPEP §§ 2243, 2246. A request

[1] Wolfspeed will avail itself of that procedure.

counts as "granted" if a substantial new question is found for even a single claim. *See* 35 U.S.C. § 304; MPEP § 2246. Defendants' 92.7% grant rate therefore says nothing about how many asserted claims will be reexamined. *See* D.I. 34 at 4–5. Any asserted claim for which no substantial new question is found will not be reexamined at all. It would be litigated here regardless of a stay. And because the parties have not yet exchanged contentions identifying the asserted claims, it is unknown whether any order will reach the claims actually at issue here. *See supra* Section II.

Defendants' statistics also undercut their own position. By Defendants' own figures, 22.9% of third-party-requested reexaminations confirm all claims. Another 61.0% end with claims changed. Only 16.1% end with all claims cancelled. D.I. 34 at 3, 5 (citing Ex. 6 at 2). In other words, at least some claims survive in roughly 84% of reexaminations. *Id.* Across five patents, the odds that every asserted claim of every patent will be cancelled are remote. Applying Defendants' own method of multiplying probabilities across the five requests (*see* D.I. 34 at 5), the chance that all claims of all five patents will be cancelled is roughly 1 in 9,200—and that assumes reexamination is ordered at all. Read correctly, Defendants' statistics indicate that this case is coming back. When it does, it will come back with Defendants free to relitigate the same prior art and to continue infringing in the meantime.

### D. EPR Will Not Resolve Infringement, Damages, or Defenses Outside Its Limited Scope.

Where the Patent Office does not invalidate all of the asserted claims, "significant issues will remain to be resolved, including issues of infringement, as well as invalidity defenses which will not be addressed by the PTO." *Cronos Techs., LLC v. Expedia, Inc.*, 2016 WL 1089752, at *1 (D. Del. Mar. 21, 2016); *see also Oracle Corp. v. Parallel Networks, LLP*, 2010 WL 3613851, at *2 (D. Del. Sep. 8, 2010) ("Insofar as the issues left for trial do not completely overlap those

typically resolved upon reexamination, a stay is disfavored."); *Ever Win*, 902 F. Supp. 2d at 506–07; *Longhorn HD LLC v. NetScout Sys., Inc.*, 2022 WL 71652, at *3 n.6 (E.D. Tex. Jan. 6, 2022). Because such significant issues remain after reexamination, the court in *Ever Win* found the simplification factor neutral: "if some or all of the claims emerge from reexamination, a not insignificant portion of the case will remain unilluminated by the PTO's review." 902 F. Supp. 2d at 507. *Cronos* reached the same result even where a non-final office action had rejected every asserted claim, because infringement and the defenses outside the Patent Office's review would still remain for trial. *See* 2016 WL 1089752, at *1. Here, there is not even an order granting reexamination. Nor does the prospect of "additional prosecution history" justify a multi-year stay. D.I. 34 at 5 (quoting *Consumeron v. MapleBear Inc.*, 2023 WL 3434002, at *2 (D. Del. May 12, 2023)). In *Consumeron*, expert discovery was complete and trial had been set. D.I. 34 at 6. The stay there rested on far more than the possibility of new prosecution history.

In sum, a stay offers no simplification. No one can say today which claims—if any—will be reexamined or which claims will be asserted, so there is no basis to conclude that any reexamination will reach the claims at issue. Defendants will not be estopped in the litigation from repeating their invalidity arguments made in the Patent Office. Wolfspeed may amend its claims, but only to narrow them. Reexamination cannot reach infringement, damages, or defenses outside its narrow scope. And Defendants' own statistics show that asserted claims will almost certainly survive. The likely result of a stay is not a simpler case, but the same case, much later.

## IV. THE EARLY STAGE OF THE CASE DOES NOT JUSTIFY AN OPEN-ENDED STAY.

Wolfspeed does not dispute that this case is at an early stage. No scheduling order has been entered. D.I. 34 at 1, 6. But this factor is not dispositive. It cannot carry a motion where the other factors weigh against a stay. *See TC Tech.*, 2021 WL 4521045, at *4. The early stage of the

case also cuts both ways. While little has been invested in the litigation, nothing has been invested in the reexaminations, which have not been ordered. Defendants' only contribution is the filing of their requests. The Patent Office has yet to take any action on them at all. *See* D.I. 34 at 7. Defendants stress that "the most burdensome stages of the case[]" lie ahead. *Id.* at 6 (quoting *IOENGINE*, 2019 WL 3943058, at *5). But claims will almost certainly survive reexamination. Those same burdens will therefore still lie ahead after a stay; they will simply arrive much later. And because EPR amendments can only narrow the claims, the work done here in the meantime will not be wasted. *See supra* Section III.B. Finally, Defendants' own early-stage authority involved a reexamination the Patent Office had already ordered. *See* D.I. 34 at 6–7 (citing *Ever Win*, 902 F. Supp. 2d at 507–08); *Ever Win*, 902 F. Supp. 2d at 505 (PTO granted reexamination while stay motion was pending).

## V. A STAY WOULD HARM WOLFSPEED AS A DIRECT COMPETITOR.

Wolfspeed and Defendants are direct competitors. Defendants' own exhibit lists both Wolfspeed and Navitas as active in the U.S. wide-bandgap semiconductor market. D.I. 34 at 8–9 (citing Ex. 8 at 2). Courts in this District recognize that "when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRx*, 2013 WL 144255, at *7; *see also Corteva Agriscience LLC v. Monsanto Co.*, 2023 WL 3119968, at *2 (D. Del. Apr. 27, 2023) ("Bayer and Plaintiff are direct competitors, which weighs against entering a stay"); *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 790 (D. Del. 2011) ("Because the parties directly compete in the 2.25 mm drug-eluting stent market, this factor disfavors a stay."). More fundamentally, "[a] patentee has an interest in prompt enforcement of its patent rights." *Minerva Surgical, Inc. v. Hologic, Inc.*, 2021 WL 1840645, at *3 (D. Del. May 7, 2021) (quoting *IOENGINE, LLC v. PayPal Holdings,*

*Inc.*, 2020 WL 6270776, at *3 (D. Del. Oct. 26, 2020)). That interest is heightened where, as here, the parties compete directly. *Id.*

In *SenoRx*, the court denied a stay because the patentee would be prejudiced if "it was required to wait many years for reexamination proceedings to close and this litigation to conclude." 2013 WL 144255, at *9. The court did not require proof that damages would ultimately be inadequate: "it need not draw such absolute conclusions to acknowledge the real prejudice SenoRx could face from a very lengthy delay before it can even reach that stage and have those issues resolved." *Id.* And it reached that result even though the proceeding there was an *inter partes* reexamination, which, unlike EPR, carried estoppel against the requester. *See id.* at *1. The prejudice here is greater still. A stay would leave Defendants free to keep selling the accused products in that market throughout years of reexamination and appeal. *See* D.I. 24. All the while, Defendants would preserve every invalidity argument for a second round in this Court.

Defendants respond that other firms also compete in the market. D.I. 34 at 8–9. They also note that Wolfspeed has not sought a preliminary injunction. *Id.* at 3, 8 (citing *Dental Monitoring v. Get-Grin Inc.*, 2024 WL 1603403, at *9 (D. Del. Apr. 9, 2024); *Neste Oil Oyj v. Dynamic Fuels, LLC*, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013)). Neither point eliminates the harm. Other competitors do not change the fact that each accused sale is made in a market where Wolfspeed competes. And whether Wolfspeed sought a preliminary injunction is irrelevant. A patentee may forgo that extraordinary remedy for many reasons, including "the high burden one must face to obtain a preliminary injunction and the difficulty in doing so without first having access to substantial discovery." *SenoRx*, 2013 WL 144255, at *8. The question on a motion to stay is whether the stay itself would unduly prejudice the non-movant, not whether the patentee pursued interim relief. Courts "caution[] not to equate" the two inquiries. *Id.* (declining to find

patentee's decision not to seek a preliminary injunction "particularly telling"). Indeed, even absent competition, "staying a case pending PTO review risks prolonging the final resolution of the dispute and thereby may result in some inherent prejudice to the plaintiff." *Cronos*, 2016 WL 1089752, at *2 (quoting *Neste*, 2013 WL 3353984, at *2). Because there is at least a "fair possibility" that a stay would damage Wolfspeed, Defendants must show a clear case of hardship or inequity in going forward. *Landis*, 299 U.S. at 255. They have not even attempted to do so; the only burden they identify is the ordinary cost of litigation, which does not qualify. *See SenoRx*, 2013 WL 144255, at *9 n.12.

The delay would also be long and open-ended. Defendants assert that delay alone is not undue prejudice. D.I. 34 at 7. But this is not ordinary delay. Defendants compare reexamination to an 18-month IPR. *Id.* at 8. Yet their own exhibit reports an average pendency of 25.2 months from filing to certificate. *Id.*, Ex. 6 at 2. As shown in Section II, that delay will only increase. And, as explained above, unlike IPR, EPR has no statutory time limit. *See supra* Section III; *Longhorn*, 2022 WL 71652, at *2 ("unlike an IPR, there is no timeline for the duration of an EPR"). Adverse determinations may be appealed to the Board and then to the Federal Circuit, further extending the delay.

> Given the early stage of the reexamination, and the average length it takes to complete a reexamination (including appeals), it follows that the stay, if granted, would almost certainly last many years. Resuming this litigation after a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents.

*Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010); *see also Benefit Funding Sys. LLC v. Advance Am., Cash Advance Ctrs., Inc.*, 2013 WL 3296230, at *2 (D. Del. June 28, 2013). Defendants' proposed order would extend the stay automatically once reexamination is ordered. D.I. 34 at 9. Such a stay has no defined end.

Finally, Defendants emphasize how quickly they filed their requests and Motion. D.I. 34 at 2–3, 7. But that very haste is what renders their Motion premature, *see supra* Section II, and the status of the reexamination proceedings is also part of the prejudice inquiry. *See Ever Win*, 902 F. Supp. 2d at 508. And in *Ever Win*, the court found that the early status of the reexamination—which, unlike here, had already been ordered—weighed *against* a stay. *Id.* at 509–10. Defendants do not mention that finding. Here, the proceedings have not even begun. D.I. 34 at 7. And because no estoppel attaches, a stay would allow Defendants "'two bites at the apple' using the same invalidity arguments in both fora." *Cronos*, 2016 WL 1089752, at *2. That gives Defendants a clear tactical advantage, however quickly they moved. They gain years of delay, continue selling the accused products, and preserve every invalidity argument for this Court.

**CONCLUSION**

Defendants filed untested requests and ask the Court to pause litigation between direct competitors for years. The likely result of that pause is not a simpler case. No one can say today whether any reexaminations will be ordered, will proceed, or will even reach the claims that will be tried. And with no estoppel, any claims that are reviewed will return with every invalidity argument intact. It would be the same case years from now, with Defendants' infringement continuing in the meantime. Defendants fail to meet their heavy burden of showing that a stay is warranted. For the foregoing reasons, Defendants' Motion to Stay should be denied.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

______________________________

Andrew C. Mayo (#5207)
Jeffrey J. Lyons (#6437)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
jlyons@ashbygeddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Blaney H. Harper
Nicole A. Paige
JONES DAY
2727 North Harwood Street, Suite 600
Dallas, TX 75201
(214) 220-3939
bharper@jonesday.com
npaige@jonesday.com

Evan P. Tassis
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
etassis@jonesday.com

Eamon M. Heaney
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939
eheaney@jonesday.com

Dated: November 10, 2026